UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

SHOLOM KELLER,

     Plaintiff,

   v.

METACRINE, INC., RICHARD HEYMAN,
RONALD EVANS, ANDREW
GUGGENHIME, JEFFREY JONKER,
PRESTON KLASSEN, JOHN
MCHUTCHISON, AMIR NASHAT, and
JULIA OWENS,

     Defendants.

Case No. 22-cv-10547

**COMPLAINT FOR VIOLATIONS OF
SECTIONS 14(a) AND 20(a) OF
THE SECURITIES EXCHANGE ACT
OF 1934**

**<u>JURY TRIAL DEMANDED</u>**

   Plaintiff Sholom Keller ("Plaintiff"), by the undersigned attorneys, alleges as follows based (i) upon personal knowledge with respect to Plaintiff's own acts, and (ii) upon information and belief as to all other matters based on the investigation conducted by Plaintiff's attorneys, which included, among other things, a review of relevant U.S. Securities and Exchange Commission ("SEC") filings, and other publicly available information.

<u>**NATURE OF THE ACTION**</u>

   1.  This action is brought by Plaintiff against Metacrine, Inc. ("Metacrine" or the "Company") and the members of the Company's Board ("Board") for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78n(a) and § 78t(a), and SEC Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9(a) ("Rule 14a-9"). Plaintiff's claims arise in connection with the Board's solicitation of public stockholders of Metacrine to approve a merger ("Merger") pursuant to which Metacrine stockholders will have the

right to receive in exchange for each share of Metacrine common stock held a portion of a share of Equillium, Inc. ("Equillium") common stock equal to an exchange ratio ("Exchange Ratio") that it is estimated will result in current Equillium stockholders owning between 82.08% and 73.32% of the common stock of the combined company, and former Metacrine stockholders owning between 17.92% and 26.68% of the common stock of the combined company.

2.     On September 6, 2022, Metacrine and Equillium announced that they had entered into a merger agreement ("Merger Agreement") to effectuate the proposed Merger.

3.     On November 10, 2022, Metacrine filed a definitive proxy ("Proxy"), in which the Board recommended that Metacrine stockholders vote in favor of a proposal to approve the Merger at a special meeting of Metacrine stockholders presently scheduled for December 20, 2022 ("Stockholder Vote").

4.     As further discussed below, the Proxy contains material misrepresentations and omissions in violation of Section 14(a) and 20(a) of the Exchange Act (15 U.S.C. § 78n(a) and § 78t(a)), and SEC Rule 14a-9 promulgated thereunder (17 C.F.R. § 240.14a-9(a)). These violations must be cured in advance of the Stockholder Vote to enable Metacrine stockholders to cast informed votes with respect to the proposed Merger. Therefore, Plaintiff seeks to enjoin the Defendants from taking any further steps to hold the Stockholder Vote and consummate the Merger, until such violations are cured. Alternatively, if the Merger is consummated, Plaintiff reserves the right to recover damages suffered by Plaintiff and similarly-situated investors as a result of such violations.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act pursuant to Section 27 of the Exchange

Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.     This Court has personal jurisdiction over each of the Defendants because each defendant has sufficient minimum contacts with the United States so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. *See Moon Joo Yu v. Premiere Power LLC*, No. 14 CIV. 7588 KPF, 2015 WL 4629495, at *5 (S.D.N.Y. Aug. 4, 2015) (because Exchange Act provides for nationwide service of process, and Defendant resides within the United States, and conducts business within the United States, he should reasonably anticipate being haled into court in the United States, and Court's exercise of personal jurisdiction over Defendant with respect to Plaintiffs' securities fraud claim is proper); *In re LIBOR-Based Fin. Instruments Antitrust Litig*., No. 11 MDL 2262 NRB, 2015 WL 6243526, at *23 (S.D.N.Y. Oct. 20, 2015) ("[w]hen the jurisdictional issue flows from a federal statutory grant that authorizes suit under federal-question jurisdiction and nationwide service of process . . . Second Circuit has consistently held that the minimum-contacts test in such circumstances looks to contacts with the entire United States rather than with the forum state.").

7.     Venue is proper under 28 U.S.C. § 1391(b) because Defendants transact business in this District. In particular, the Company's common stock trades under the ticker "MTCR" on NASDAQ, which is headquartered in this District, and the false and misleading Proxy was filed with the SEC, which has a regional office in this District. *See Mariash v. Morrill*, 496 F.2d 1138, 1144 (2d Cir. 1974) (venue appropriate in the Southern District of New York where an act or transaction constituting the alleged violation occurred in the Southern District of New York); *United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (venue in tender offer fraud prosecution appropriate in District).

## PARTIES

8.      Plaintiff is, and has been at all relevant times, a continuous stockholder of Metacrine common stock.

9.      Defendant Metacrine is a Delaware corporation with its principal executive offices located at 4225 Executive Square, Suite 600, San Diego, California 92037.

10.     Defendant Richard Heyman has been Chairman of the Board since June 2015, and a member of the Board since September 2014.

11.     Defendant Ronald Evans has been a member of the Board since September 2014.

12.     Defendant Andrew Guggenhime has been a member of the Board since July 2018.

13.     Defendant Jeffrey Jonker has been a member of the Board since March 2021.

14.     Defendant Preston Klassen has served as President and Chief Executive Officer of the Company and as a member of the Board since June 2020.

15.     Defendant John McHutchison has been a member of the Board since February 2020.

16.     Defendant Amir Nashat has been a member of the Board since January 2015.

17.     Defendant Julia Owens has been a member of the Board since April 2021.

18.     Defendants identified in paragraphs 10 to 17 are collectively referred to herein as the "Individual Defendants," and together with Metacrine, collectively, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Metacrine's Businesses

19.     Metacrine is a clinical-stage biopharmaceutical company currently focused on discovering and developing differentiated therapies for patients with gastrointestinal, or GI, diseases. Metacrine's most advanced drug product, MET642, targets the farnesoid X receptor, or

4

FXR, which is central to modulating GI and liver disease.

**Background to the Merger**

20.     On December 2, 2021, Metacrine began a process of evaluating a number of potential strategic alternatives. Over the course of this review of potential strategic alternatives, Metacrine, with the assistance of its financial advisor, MTS Health Partners, L.P. ("MTS"), contacted or had discussion with 18 companies regarding a potential merger, acquisition or strategic partnership, executed confidential disclosure agreements, or CDAs, with nine companies, and engaged with six companies by either providing or receiving a preliminary proposal. Out of this review, five leading merger candidates emerged: Party A, Party B, Party C, Party D and Equillium.

21.     On March 2, 2022, Equillium proposed an all-stock transaction that valued Metacrine at $37.5 million ("March 2022 Proposal"). At the time, the Board believed it had a better offer from Party A, and let the March 2022 Proposal lapse.

22.     After the Board considered proposals from several other potential acquirors, Defendant Klassen reconnected with the CEO of Equillium, Bruce Steel, on May 11, 2022.

23.     On May 16, 2022, Equillium sent Metacrine a new proposal that also valued Metacrine at $37.5 million. After additional rounds of negotiations, the parties finalized the terms of the Merger, including the Exchange Ratio.

24.     On September 2, 2022, MTS presented its opinion ("September Fairness Opinion") to the Board that the Exchange Ratio to be received by Metacrine stockholders pursuant to the Merger was fair, from a financial point of view, to Metacrine stockholders.

25.     On September 6, 2022, the Board determined by unanimous written consent that the Merger was in the best interests of Metacrine and its stockholders, and resolved to recommend

that Metacrine stockholders vote in favor of the Merger. Later that day, Metacrine and Equillium executed the Merger Agreement, and issued a joint press release announcing the Merger.

26.     On October 11, 2022, Metacrine management, MTS, and their respective legal advisors met to discuss, *inter alia*, certain adjustments to the projections underlying the Fairness Opinion provided by MTS in September 2022. In light of these discussions, Metacrine management in consultation with its advisors determined that additional financial projections, along with a revised fairness opinion from MTS, should be prepared and presented to the Board.

27.     On October 19, 2022, MTS presented a second opinion ("October Fairness Opinion") to the Board that the Exchange Ratio to be received by Metacrine stockholders pursuant to the Merger was fair, from a financial point of view, to Metacrine stockholders.

**The Proxy Contains Material Misrepresentations and Omissions**

28.     Defendants disseminated a false and misleading Proxy to Metacrine stockholders that misrepresents or omits material information that is necessary for Metacrine stockholders to cast informed votes with respect to the Merger.

*Material Omissions Concerning Projections*

29.     When a financial advisor's endorsement of the fairness of a transaction is touted to stockholders, not just the analyses used by that advisor to arrive at the fairness opinion, but also the key inputs used in those analyses must be fairly disclosed. Because a discounted cash flow ("DCF") analysis is arguably the most important valuation metric, when a proxy discloses that certain projections provided by management were used by a financial advisor in a DCF analysis that formed the basis for its fairness opinion, such projections must be disclosed.

30.     Here, the Proxy states at page 92:

in connection with the Metacrine Board's evaluation of the Merger, preliminary internal financial projections for Equillium were prepared by the management of

6

Equillium and provided to the management of Metacrine, and then adjusted by the management of Metacrine, or the Metacrine-Prepared Projections, solely for use by MTS in connection with the rendering of its fairness opinion and performing its related financial analyses . . . ***The Metacrine-Prepared Projections include unlevered free cash flow*** . . .

31.    Thereafter, at pages 107 and 115, the Proxy discloses that, in connection with the September Fairness Opinion and the October Fairness Opinion, Metacrine's financial advisor, MTS, performed DCF analyses that discounted "Unlevered Free Cash Flow" to present values. However, the Proxy nowhere discloses these Unlevered Free Cash Flows, even though (i) the DCF analyses performed by MTS were a key basis for MTS concluding that the Exchange Ratio was fair to Metacrine Stockholders, and (ii) the Board cited the September 2022 and October 2022 Fairness Opinions as one of the reasons for recommending that Metacrine stockholders vote to approve the Merger.

32.    Based on the foregoing, the Board must direct the filing of a corrective disclosure in an amendment or supplement to the Proxy that fully discloses the Unlevered Free Cash Flows used by MTS to perform the DCF analyses forming a key basis for its September 2022 and October 2022 Fairness Opinions.

***Material Omissions Concerning Post-Merger Employment Discussions***

33.    The Proxy states at pages 120-21:

To our knowledge, except for Dr. Klassen serving as the Metacrine designated director on Equillium's Board following the closing of the Merger in accordance with the Merger Agreement, ***no employment, equity contribution or other written agreement between any executive officer or director of Metacrine, on the one hand, and Equillium or its affiliates, on the other hand, existed as of the date of this registration statement***, and the Merger is not conditioned upon any executive officer or director of Metacrine entering into any such agreement, arrangement or understanding . . . ***It is possible that members of Metacrine's current management team will enter into new employment or consulting arrangements with Equillium or its affiliates, with any such arrangements to become effective after the Merger is completed, if at all.*** There can be no assurance that the applicable parties will reach an agreement on any terms, or at all.

7

34.    Metacrine is a Delaware corporation, and concerning disclosure of post-Merger arrangements, the Delaware Chancery Court has explained that there is meaningful distinction between discussing "employment terms," and discussing generally the prospect of post-Merger employment. *In re Mindbody, Inc*., 2020 WL 5870084, at \*11 (Del. Ch. Oct. 2, 2020) (observing that the "Definitive Proxy stated that 'Vista and [Mindbody] ***had not engaged in any employment or retention-related discussions*** with regard to [Mindbody] management,' but the Supplemental Proxy stated more carefully that 'Vista and [Mindbody] ***had not discussed the terms*** of post-closing employment or equity participation for [Mindbody] management.").

35.    Here, while the Proxy states that there were no agreements as of the date of the Proxy between Equillium and any executive officer or director of Metacrine concerning any post-Merger employment or equity participation, the Proxy does not disclose whether any discussions concerning such agreements took place between Equillium and any executive officer or director of Metacrine involved in negotiating the Merger. Indeed, the quotation above from the Proxy confirms the possibility of new employment or consulting agreements between members of Metacrine's current management team and Equillium, which indicates that such discussions might have taken place.

36.    Having ventured into the subject of post-Merger employment, the Board must direct the filing of a corrective disclosure in an amendment or supplement to the Proxy clarifying whether or not any discussions concerning post-Merger employment or equity participation took place between Equillium and any executive officer or director of Metacrine involved in negotiating the Merger, before all of the material terms of the Merger had been agreed upon.

### CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants**
**for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

37.     Plaintiff incorporates and repeats each and every allegation above as if fully set forth herein.

38.     SEC Rule 14a-9, 17 C.F.R. §240.14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides:

> No solicitation subject to this regulation shall be made by means of any Proxy, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

39.     Defendants disseminated the false and misleading Proxy, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

40.     By virtue of their positions within the Company, and/or roles in the process of preparing, reviewing, and/or disseminating the Proxy, Defendants were aware of their duty not to make false and misleading statements in the Proxy, and not to omit material facts from the Proxy necessary to make statements made therein—in light of the circumstances under which they were made—not misleading.

41.     Yet, as specified above, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, Defendants (i) made untrue statements of material fact in the Proxy, and/or (ii) omitted

material facts from the Proxy necessary to make statements therein— in light of the circumstances under which they were made—not misleading, in order to induce Metacrine stockholders to vote in favor of the Merger Proposal. Defendants were at least negligent in filing the Proxy with these material misrepresentations and omissions.

42.     The material misrepresentations and omissions in the Proxy specified above are material insofar as there is a substantial likelihood that a reasonable Metacrine stockholder would consider them important in deciding whether to vote in favor of the Merger and related proposals. In addition, a reasonable Metacrine stockholder would view disclosures of the omitted facts specified above as significantly altering the "total mix" of information made available to Metacrine stockholders.

43.     Because of the material misrepresentations and omissions in the Proxy specified above, Plaintiff and other Metacrine stockholders are threatened with irreparable harm insofar as Plaintiff and other Metacrine stockholders will be deprived of their entitlement to cast fully informed votes with respect to the Merger Proposal if such material misrepresentations and omissions are not corrected before the Stockholder Vote. Therefore, injunctive relief is appropriate.

## COUNT II

### Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act

44.     Plaintiff incorporates and repeats each and every allegation above as if fully set forth herein

45.     The Individual Defendants acted as controlling persons of Metacrine within the meaning of Section 20(a) of the Exchange Act, as alleged herein.  By virtue of their positions as officers and/or directors of Metacrine, and participation in, and/or awareness of Metacrine's

operations, and/or intimate knowledge of the contents of the Proxy filed with the SEC, they had

the power to influence and control, and did influence and control, directly or indirectly, the

decision-making of Metacrine with respect to the Proxy, including the content and dissemination

of the various statements in the Proxy that Plaintiff contends are materially false and misleading,

and the omission of material facts specified above.

46.     Each of the Individual Defendants was provided with or had unlimited access to

copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or

shortly after these statements were issued and had the ability to prevent the issuance of the

statements or cause the statements to be corrected.

47.     Each of the Individual Defendants had direct and supervisory involvement in the

negotiation of the Merger, and, therefore, is presumed to have had the power to control or influence

the particular transactions giving rise to the securities violations alleged herein, and exercised

same. In particular, the Proxy at issue references the unanimous recommendation of the Board to

approve the Merger, and recommend that Metacrine stockholders vote for the Merger. The

Individual Defendants were thus directly involved in the making of the Proxy.

48.     In addition, as the Proxy sets forth at length, and as described herein, the Individual

Defendants were involved in negotiating, reviewing, and approving the Merger.  The Proxy

purports to describe the various issues and information that the Individual Defendants reviewed

and considered in connection with such negotiation, review and approval.

49.     By virtue of the foregoing, the Individual Defendants had the ability to exercise

control over and did control a person or persons who violated Section 14(a), by their acts and

omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants

are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of

Individual Defendants' conduct, Plaintiff will be irreparably harmed.

50.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict, and can Plaintiff and other Metacrine stockholders cast fully informed votes with respect to the Merger.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, employees and all other agents and persons acting in concert with them from proceeding with and holding the Stockholder Vote and consummating the Merger, unless and until Defendants disclose and disseminate to Metacrine stockholders the material information specified above that has been omitted from the Proxy, and correct any false and misleading statements in the Proxy;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the transactions contemplated thereby, or granting Plaintiff rescissory damages;

C.     Directing Defendants to account to Plaintiff for all damages suffered as a result of their misconduct;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees and expenses; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: December 14, 2022                    **WOHL & FRUCHTER LLP**


By:/s *Joshua E. Fruchter*
Joshua E. Fruchter (JF2970)
25 Robert Pitt Drive, Suite 209G
Monsey, NY 10952
Tel: (845) 290-6818
Fax: (718) 504-3773
Email: jfruchter@wohlfruchter.com

*Attorneys for Plaintiff*

13